1
2
3
4
5
6
7                        UNITED STATES DISTRICT COURT
8                  FOR THE EASTERN DISTRICT OF CALIFORNIA

9    JOSHUA SCOTT PICKLES,

10                    Petitioner,              CASE NO. C07-876BHS

11          v.

12   D.G. ADAMS,                               ORDER DENYING PETITION
                                               FOR WRIT OF HABEAS
13                    Respondent.              CORPUS

14

15          This matter comes before the Court on the Petition for Writ of Habeas Corpus

16   (Dkt. 1).  The Court has considered the petition, the answer, the traverse, and the

17   remainder of the file and hereby denies the petition for the reasons stated herein.

18                  **I.  PROCEDURAL AND FACTUAL BACKGROUND**

19          Petitioner is a state prisoner currently incarcerated at Corcoran State Prison.  He

20   filed this petition for writ of habeas corpus to challenge his 2005 Sacramento County

21   conviction.  Dkt. 1.

22   **A.     Petitioner's Trial and Sentence**

23          On February 15, 2005, a jury found Petitioner guilty of robbery (Cal. Penal Code,

24   § 211), attempted murder (Cal. Penal Code, §§ 664/187), burglary (Cal. Penal Code, §

25   459), and assault with a firearm (Cal. Penal Code, § 245, subd. (a)(2)).  Lodged

26   Document 1, Clerk's Transcript ("CT") at 138-41.  The jury further found true the

27   allegation that the attempted murder was willful, deliberate and premeditated (Cal. Penal

28

Code, § 664, subd. (a)). *Id.* at 139. On June 17, 2005, the trial court sentenced Petitioner to life with the possibility of parole plus three years. *Id.* at 169-72.

**B.    Petitioner's Appeal, Petition for Rehearing, and Petition for Review**

On July 26, 2005, Petitioner timely appealed to the California Court of Appeals, Third Appellate District, Case No. C050367. Lodged Document 2. The court summarized the facts of this case and the trial court proceedings as follows:

A. The Prosecution's Case

At approximately 5:00 p.m. on August 7, 2004, Harsha Rathod, the owner of Deboo's Indian Cuisine, located in Discovery Plaza on West El Camino and Truxel in Sacramento, was speaking with Surinder Kaur about selling her restaurant. Rathod's son, DeVandra (Deboo), and Kaur's daughter, Kulwinder Singh, were behind a curtain playing video games. While the two women were conversing, Prasad entered and asked if Ravi was there. Rathod told him Ravi was not there and Prasad left. Rathod recognized Prasad because he frequented her nearby tobacco store where he bought cigars from her.

Twenty minutes later, Prasad returned with defendant Pickles, who Rathod also recognized because he patronized her tobacco store on a daily basis. Both men were wearing hooded sweatshirts and Pickles was wearing gloves. Prasad pulled a rifle out from beneath his sweatshirt, told Rathod "you got robbed, open the drawer," and then fired a bullet into the deli case.

Rathod was scared and told Kaur, Singh, and DeBoo to go out the back and then she opened the cash register. Prasad directed Pickles to take the money so he emptied the register, taking between $40 and $60 from the drawer. He also took money from Kaur's purse. Rathod asked Prasad why he was doing this and he told her to "[a]sk Ravi. He's your husband. Ask him why I'm doing this."[2] Pickles stuffed the money into his pockets as he and Prasad ran out the front door and headed for a car that had been backed into a parking space in front of the restaurant.

FN2. Ravi was Rathod's boyfriend at the time.

Meanwhile, Lyle Reed, an unarmed uniformed security officer, was patrolling the plaza. As he rounded a corner leading to a walkway near the restaurant, he saw Pickles run around the corner and jump into the driver's seat of the getaway car while Prasad got into the front passenger seat. As Prasad was bending over to put the gun away, Rathod came running out of the restaurant pointing at defendants and yelling "those guys, those guys."

Realizing something was wrong, Reed walked into the parking lot to see the front license plate of the vehicle. He angled himself about 15 to 20 feet away from the vehicle on the driver's side of the car, so he could see that the number three was the first number on the license plate. At that time, he noticed Prasad who was "covered completely coming up with what [Reed] saw was a [.22 caliber] rifle." Prasad got out of the car and,

standing in the open doorway, placed the rifle across the windshield and aimed it at Reed. When Reed saw the barrel of the gun pointing at him, he raised one hand and said "no, no, no" and then turned and started to run. A split second later, Prasad shot him in the arm but Reed continued to run for cover as Prasad fired another three or four shots at him. Reed collapsed near a walkway and then dragged himself to a nearby car, positioning himself so the engine block of the car was between him and Prasad.

Meanwhile, Enrique Menendez, an employee of one of the stores in the plaza, was outside and saw Deboo and Singh exit the back of Deboo's Restaurant "looking really scared." Deboo told Menendez two men were robbing the restaurant and that his mom was still inside. A minute or two later after Prasad shot Reed, he turned his gun on Menendez, Singh, and Deboo, and fired at least three shots at them. The threesome avoided being hit by ducking behind a truck but Menendez saw Pickles drive the getaway car out of the parking lot.

Defendant Prasad's father, Roger Prasad (Roger), testified that defendant lived at his house on Clay Street with Pickles' sister and their two children. Roger was the registered owner of a charcoal gray 1991 Mazda Protege, license plate number 4UMY803, which was defendant Prasad's primary car. Roger's wife left him the day of the robbery for Ravi Mathur who was her supervisor at work. When Roger returned home from work at approximately 5:00 p.m. the day of the robbery, he noticed the Mazda was not there and when he asked Prasad where the car was, Prasad told him it had been stolen. Neither of them called the police to report a stolen vehicle. Later that night, Roger received a telephone call from Rathod telling him she believed his son had robbed her restaurant that day.

A little before midnight on August 10, 2004, 12-year-old Brian Badeker who lived near the old air force base, heard a car outside his home racing up and down the street and "doing donuts." When he went outside, he saw a car burning. By the time the fire department arrived, the car had completely burned. Using the license plate number on the car, it was determined that Roger Prasad was the registered owner. However, when a police dispatcher contacted Roger about his car, he said he did not know where it was nor did he care and that she should not bother him any further.

Sacramento Fire Department Investigator Robert Moore conducted an investigation of the burned vehicle and concluded the fire was of a very high intensity and was intentionally set. When Moore questioned Badeker, he told Moore he saw two cars, a silver Mazda driven by a male who he described as male, 20 to 30 years old, white, approximately 5 feet nine inches tall, weighing 140 pounds. He saw the male drive the Mazda to the position where it was burned, exit the vehicle and walk over to a Honda where two other individuals were waiting. Badeker described the other individual as one 20- to 30-year-old white male and the other as a Hispanic male of the same age. The driver of the Mazda appeared to be ferrying things back and forth from the Honda to the Mazda. Badeker then heard the sound of glass breaking and saw fire coming from the Mazda. The driver of the Mazda went back to the Honda and the driver sped away.

Pickles and his brother, Anthony Sexton, lived across the street from the Prasad family. During an interview of Sexton by a Sacramento City

detective, Sexton stated that he had seen Prasad with a Tech .22 firearm, which he waved around and would "shoot it off a lot." The last time Sexton saw Prasad with that gun was on July 4, 2004, a month before the robbery.

B. Defense

Prasad did not testify but called several witnesses in support of an alibi and mistaken identity defense. He called a psychiatrist to testify about the process of eyewitness identification and the factors that cause misidentification.

Two of Prasad's sisters testified they were home all day on August 7, 2004, with Prasad who was babysitting his two children, and he never left the house. They testified that they had never seen Prasad with a gun or ammunition and the family Mazda had been missing for several days prior to August 7, 2004. Prasad's girlfriend, Jennifer Pickles, testified to the same effect. She further testified that she telephoned defendant at home that day between 5:00 and 5:30 p.m. and spoke to him.

Pickles did not testify and called no witnesses on his own behalf, but relied on the defense of misidentification.

Lodged Document 5 at 3-8.[1]

On August 15, 2006, the court upheld Petitioner's conviction but awarded him one additional day of custody credit. *Id*. at 50.

On August 20, 2006, Petitioner filed a Petition for Rehearing and argued that the court's opinion did not address one of Petitioner's claims on appeal. Lodged Document 6 at 1. On September 7, 2006, the court issued a Modification of Opinion Upon Denial of Petition for Rehearing. Lodged Document 7. The court modified its original opinion and claimed that the "modification does not effect a change in the judgment." *Id*. at 4.

On September 15, 2006, Petitioner filed a Petition for Review in the Supreme Court of California. Lodged Document 8. On November 29, 2006, the court summarily denied the petition. Lodged Document 9.

**C.    Petitioner's Federal Habeas Corpus Petition**

On March 30, 2007, Petitioner filed a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254. Dkt. 1. On March 14, 2008, Respondent answered. Dkt. 19. On May 22, 2008, Petitioner filed a traverse. Dkt. 23.

---

[1] The court's opinion may also be found at 2006 WL 2349930.

The Court has carefully reviewed the entire record in this case.

## II. CLAIMS

Petitioner raises eight claims in his federal habeas petition, which are as follows:

> 1. The trial court violated his federal right to due process because there was insufficient evidence to support his conviction based upon a theory of aiding and abetting.
>
> 2. The trial court violated his federal right to due process when it denied his Penal Code § 1118.1 Motion on the Premeditation Allegation – there was no evidence that premeditation was a natural and probable consequence of the robbery.
>
> 3. California Jury Instruction ("CALJIC") No. 3.02 as given in this case violated his federal due process right to have the jury determine every element of the offense.
>
> 4. The verdict on count two violated his federal due process rights and it should be set aside because it was against the weight of the evidence – the evidence supported a verdict of assault with a deadly weapon, not attempted murder or premeditated attempted murder.
>
> 5. He received ineffective assistance of counsel in violation of his Sixth Amendment rights because counsel did not request a duress instruction.
>
> 6. The trial court violated his federal due process rights to have the jury determine every element of the offense because it refused to give grand theft and petty theft instructions on count one, robbery.
>
> 7. The trial court violated his federal due process rights when it denied defense counsel's request to suppress the photographic lineup as impermissible suggestive as to Petitioner.
>
> 8. The trial court violated his federal due process right to a fair trial when it denied the defense motion to exclude the burned car evidence – the evidence was irrelevant and any probative value it might have had was outweighed by its prejudicial value.

Dkt. 1 at 3-6.

## III. EXHAUSTION

Before claims may be raised in a federal habeas corpus petition, state remedies must be exhausted; or an applicant must show there is either an absence of available state corrective process or that circumstances exist that render such process ineffective to protect the rights of the applicant. 28 U.S.C. § 2254(b)(1); *see also, Rose v. Lundy*, 455 U.S. 509 (1982). A claim has been exhausted once it has been fairly presented to the

state's highest court and the court has had the opportunity to rule on the merits of the claim. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Picard v. Connor*, 404 U.S. 270, 275-276 (1971); *Batchelor v. Cupp*, 693 F.2d 859, 862 (9th Cir. 1982), *cert. denied*, 463 U.S. 1212 (1983).

A petitioner must present the claims to the state's highest court based upon the same federal legal theory and factual basis as the claims are subsequently asserted in the habeas petition. *Hudson v. Rushen*, 686 F.2d 826, 829-830 (9th Cir. 1982), *cert denied* 461 U.S. 916 (1983); *Schiers v. California*, 333 F.2d 173, 176 (9th Cir. 1964). Specifically, a petitioner must apprise the state courts that an alleged error is not only a violation of state law, but a violation of the Constitution. *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995). Vague references to broad constitutional principles such as due process, equal protection, or a fair trial do not satisfy the exhaustion requirement. *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999); *Gatlin v. Madding*, 189 F.3d 882, 888 (9th Cir. 1999), *cert. denied*, 528 U.S. 1087 (2000). A petitioner must include reference to a specific federal constitutional guarantee as well as a statement of the facts that entitle the petitioner to relief. *Netherland*, 518 U.S. at 162-163.

In this case, Respondent submits that Petitioner's claims were presented to the state's highest court and have been exhausted. Dkt. 19 at 2. The Court agrees.

## IV. STANDARD OF REVIEW

A habeas corpus petition shall not be granted with respect to any claim adjudicated on the merits in the state courts unless the adjudication either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court is not required to cite a formulary statement of the controlling test for each asserted claim. It suffices that the "fair import" of the state court's decision is that it applied the controlling Supreme Court standard. *Early v. Packer*, 537 U.S. 3, 9 (2002). Likewise, a state court adjudication is not "contrary to" clearly established federal law merely because it does not cite Supreme Court authority "so long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court authority]." *Id.*

Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Id.*

A determination of a factual issue by a state court shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## V. DISCUSSION

**A.    Insufficient Evidence of Aiding and Abetting**

Petitioner claims that his federal right to due process was violated because there was insufficient evidence to support his conviction based upon a theory of aiding and abetting. Dkt. 1 at 5.

In reviewing Petitioner's claim, the California Court of Appeals provided the following factual summary:

> Defendant Pickles contends the evidence is insufficient to support the verdicts on all counts because there is no evidence to establish his intent to furnish knowing aid to Prasad in the commission of the robbery. He argues there was no evidence he knew Prasad had a firearm before they

entered the restaurant and he only did what Prasad ordered him to do once the robbery was in progress. From that factual vantage point, he argues that if he really knew Prasad's unlawful purpose when they entered the restaurant, there would have been no need for Prasad to tell him to take the money from the cash register.

Respondent contends there is ample substantial evidence defendant provided knowing aid in the commission of the robbery and that defendant omits the facts that establish his knowledge.

Lodged Document 5 at 23-24.

The California Court of Appeals ultimately rejected Petitioner's challenge to the sufficiency of the evidence on the theory of aiding and abetting. The court reasoned and concluded as follows:

In making his claim, Pickles asks us to reweigh the evidence and ignore the jury's determination of Rathod's credibility. In so doing, he ignores the substantial evidence test, which requires that when evaluating a challenge to the sufficiency of the evidence, an appellate court must view the evidence in the light most favorable to the People and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. If the verdict is supported by substantial evidence, we accord due deference to the trier of fact and will not reweigh the evidence or substitute our evaluation of a witness's credibility for that of the jury's. (*People v. Ochoa*, *supra*, 6 Cal.4th at p. 1206, 26 Cal. Rptr. 2d 23, 864 P.2d 103.)

Any person who aids and abets in the commission of a crime is a principal in the crime committed. (§ 31.) A person aids and abets the commission of a crime when he or she, acting with knowledge of the unlawful purpose of the perpetrator; and with the intent or purpose of committing, encouraging, or facilitating the commission of the offense, by act or advice aids, promotes, encourages or instigates, the commission of the crime. (*People v. Beeman* (1984) 35 Cal.3d 547, 559-560, 199 Cal. Rptr. 60, 674 P.2d 1318; *People v. McCoy* (2001) 25 Cal.4th 1111, 1117, 108 Cal. Rptr. 2d 188, 24 P.3d 1210.)

The Supreme Court has explained that "an aider and abettor's liability for criminal conduct is of two kinds. First, an aider and abettor with the necessary mental state is guilty of the intended crime. Second, under the natural and probable consequences doctrine, an aider and abettor is guilty not only of the intended crime, but also 'for any other offense that was a "natural and probable consequence" of the crime aided and abetted.' [Citation.] Thus, for example, if a person aids and abets only an intended assault, but a murder results, that person may be guilty of that murder, even if unintended, if it is a natural and probable consequence of the intended assault." (*People v. McCoy, supra*, 25 Cal.4th at p. 1117, 108 Cal. Rptr. 2d 188, 24 P.3d 1210, quoting *People v. Prettyman* (1996) 14 Cal.4th 248, 260, 267, 58 Cal. Rptr. 2d 827, 926 P.2d 1013.)

The requisite intent must be formed prior to or during the commission of the offense. (*People v. Cooper* (1991) 53 Cal.3d 1158, 1164, 282 Cal. Rptr. 450, 811 P.2d 742.) Thus aider and abettor liability is established if the getaway driver forms "the intent to facilitate or encourage commission of the robbery prior to or during the carrying away of the loot to a place of temporary safety." (*Id.* at p. 1165, 282 Cal. Rptr. 450, 811 P.2d 742, italics and fn. omitted.)

Intent to aid and abet may be inferred from the defendant's presence at the scene of the crime, his failure to take steps to prevent the commission of the crime, his companionship with the perpetrator, and his conduct before, during, and after the crime. (*People v. Jones* (1980) 108 Cal. App. 3d 9, 15, 166 Cal. Rptr. 131; *People v. Eskew* (1962) 206 Cal. App. 2d 205, 206-207, 23 Cal. Rptr. 466.)

There is substantial evidence from which the jury could reasonably conclude defendant knew Prasad's criminal purpose before and during the robbery. Defendant concedes there is substantial evidence he and Prasad had a prior relationship.[9] Looking to defendant's conduct before, during and after the robbery, the evidence establishes he was the driver of the getaway car, which he parked by backing into a parking space in front of the restaurant. This evidence supports a reasonable inference he knew he and Prasad were going to commit the robbery before it began so he parked the car in a manner that would facilitate a fast escape. Moreover, it was August when defendant and Prasad entered the restaurant, yet defendant was wearing a hooded sweatshirt and gloves. His efforts to hide his identity by wearing a hood and gloves, which clearly were not required in the heat of the Sacramento summer, give rise to an inference he was aware of Prasad's plan to commit the robbery and was an active participant in that plan.

> FN9. The evidence shows Pickles' sister had children with Prasad and lived with him and their two children in the Prasad household, and that Pickles and his brother had lived across the street from the Prasad family since 1995 or 1996.

Although Prasad told defendant to take the money, he did so after firing a loaded rifle at the deli case and ordering Rathod to open the cash register. These actions clearly demonstrated his intent to commit a robbery, thereby placing defendant on notice of his intentions. Defendant did not object or take any steps to prevent the robbery, nor did he express any surprise. Instead, he emptied the cash register of the money and then on his own initiative, he removed money from Kaur's purse.

Moreover, the jury could reasonably infer defendant knew Prasad had a gun. The witnesses described the gun as being a rifle, about three feet long. Although he hid it under his sweatshirt when he entered the restaurant, given its size, the jury could reasonably find he was unable to conceal it from Pickles on their way to the robbery. Moreover, the getaway car belonged to Prasad's father. Thus, there was no apparent reason for defendant to drive the getaway car except to enable Prasad to use the gun so he would not have to shoot and drive at the same time.

Taken all together, this evidence constitutes strong substantial evidence that defendant knew Prasad's criminal purpose and aided and abetted that purpose by actively participating in the robbery before, during, and after its commission. We therefore reject his challenge.

Lodged Document 5 at 24-27.

When a challenge is brought alleging insufficient evidence, federal habeas corpus relief is available if it is found that upon the evidence adduced at trial, viewed in the light more favorable to the prosecution, no rational trier of fact could have found proof of guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), *overruled on other grounds by Schlup v. Delo*, 513 U.S. 298 (1995). It is the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "The question is not whether we are personally convinced beyond a reasonable doubt. It is whether rational jurors could reach the conclusion that these jurors reached." *Roehler v. Borg*, 945 F.2d 303, 306 (9th Cir. 1991). Under *Jackson*, the federal habeas court determines sufficiency of the evidence in reference to the substantive elements of the criminal offense as defined by state law. *Jackson*, 443 U.S. at 324, n.16.

In this case, Petitioner's claim has no merit. Viewing the facts in the light most favorable to the state, a rational jury could have found that Petitioner was guilty of aiding and abetting beyond a reasonable doubt. The ultimate fact that Petitioner knew that he was participating in a robbery could reasonably be inferred from the basic facts that Petitioner drove the getaway car, was dressed to conceal his identity, and took the money from the cash register and the purse. Petitioner argues that these individual facts do not show that he intended to aid or abet a robbery. Dkt. 23 at 8-14. However, in light of all of these facts, the Court cannot say that rational jurors could not reach the conclusion that these jurors reached.

Therefore, the Court denies Petitioner's claim for habeas relief based on the argument that there was insufficient evidence to support his conviction for aiding and abetting. Petitioner has failed to show how the state court's decision on this issue was

contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court. Petitioner has also failed to show that the state court's decision on this issue resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts.

**B.    Motion for Acquittal as to Premeditated Attempted Murder**

Petitioner's second claim and fourth claim are closely related. In his second claim for habeas relief, Petitioner argues that his federal right to due process was violated because the trial court erroneously denied his motion for acquittal (Cal. Penal Code, § 1118.1) as to premeditated attempted murder. Dkt. 1 at 5. In his fourth claim for habeas relief, Petitioner argues that his federal right to due process was violated because there was insufficient evidence to support his conviction for premeditated attempted murder. *Id.*

In reviewing Petitioner's claims, the California Court of Appeals provided the following factual summary:

> Pickles contends the trial court erred by denying his motion for acquittal (§ 1118.1) as to attempted murder and premeditated attempted murder because the evidence was insufficient to establish that either offense was a natural and probable consequence of the robbery.

Lodged Document 5 at 31 (footnote omitted).

The California Court of Appeals ultimately rejected Petitioner's challenge to the trial court's denial of his § 1118.1 motion and to the sufficiency of the evidence on premeditated attempted murder. The court reasoned and concluded as follows:

> In ruling on a motion for judgment of acquittal pursuant to section 1118.1, the trial court applies the substantial evidence test, " 'whether from the evidence, including all reasonable inferences to be drawn therefrom, there is any substantial evidence of the existence of each element of the offense charged.' " (*People v. Crittenden* (1994) 9 Cal.4th 83, 139, fn. 13, 36 Cal. Rptr. 2d 474, 885 P.2d 887; *People v. Mendoza* (2000) 24 Cal.4th 130, 175, 99 Cal. Rptr. 2d 485, 6 P.3d 150; *People v. Cuevas* (1995) 12 Cal.4th 252, 261, 48 Cal. Rptr. 2d 135, 906 P.2d 1290.) On appeal from the denial of a motion for acquittal, the reviewing court applies that same standard of review. (*People v. Reyes* (1984) 153 Cal. App. 3d 803, 809-810, 200 Cal. Rptr. 651; *People v. Rippberger* (1991) 231 Cal. App. 3d 1667, 1680-1681, 283 Cal. Rptr. 111.)

It is well established that one who aids and abets the commission of a target offense is liable not only for the crime intended, but for "'any reasonably foreseeable offense committed by the person he aids and abets . . . . It follows that a defendant whose liability is predicated on his status as an aider and abettor need not have intended to encourage or facilitate the particular offense ultimately committed by the perpetrator. His knowledge that an act which is criminal was intended, and his action taken with the intent that the act be encouraged or facilitated, are sufficient to impose liability on him for any reasonably foreseeable offense committed as a consequence by the perpetrator. It is the intent to encourage and bring about conduct that is criminal, not the specific intent that is an element of the target offense, which ... must be found by the jury.' [Citation.] Thus, under *Croy* [*supra*, 41 Cal.3d 1, 12, fn. 5], a defendant may be held criminally responsible as an accomplice not only for the crime he or she intended to aid and abet (the target crime), but also for any other crime that is the 'natural and probable consequence' of the target crime." (*People v. Prettyman*, *supra*, 14 Cal.4th at p. 261, 58 Cal. Rptr. 2d 827, 926 P.2d 1013.)

The unintended offense need not be specifically planned or agreed upon, or even substantially certain to result from the commission of the intended offense to be "reasonably foreseeable" or a "natural and probable" consequence of the intended offense. (*People v. Nguyen* (1993) 21 Cal. App. 4th 518, 530, 26 Cal. Rptr. 2d 323.) Thus, murder or attempted murder is generally found to be a reasonably foreseeable result of a plan to commit armed robbery. (*People v. Nguyen*, *supra*, 21 Cal. App. 4th at p. 530, 26 Cal. Rptr. 2d 323; *People v. Prettyman*, *supra*, 14 Cal.4th at p. 263, 58 Cal. Rptr. 2d 827, 926 P.2d 1013.)

The test for determining whether a criminal act is the natural and probable consequence of another criminal act, is an objective one of causation, "i.e., whether a reasonable person under like circumstances would recognize that the crime was a reasonably foreseeable consequence of the act aided and abetted." (*People v. Woods* (1992) 8 Cal. App. 4th 1570, 1587, 11 Cal. Rptr. 2d 231.) The question is one of fact to be resolved by the jury in light of all of the circumstances surrounding the incident. (*People v. Nguyen*, *supra*, 21 Cal. App. 4th at p. 531, 26 Cal. Rptr. 2d 323.)

As Pickle[s] correctly recognizes, the factual question to be determined is whether the offense of premeditated attempted murder was a natural and probable consequence of the armed robbery.

Applying these principles, the jury could reasonably find the premeditated attempted murder of Reed, a uniformed security guard, was a natural and probable consequence of the armed robbery of the restaurant. As we discussed in Part I of Prasad's appeal, there is substantial evidence that Prasad and Pickles planned to commit an armed robbery of the restaurant. Prasad cased the restaurant about 20 minutes before he and Pickles entered to rob it, Pickles drove the getaway car and backed it into a parking space in front of the restaurant to facilitate a fast escape, that he wore gloves to avoid leaving fingerprints when he took the money while Prasad wielded the firearm to keep the victims and other witnesses at bay to prevent anyone from interfering with their criminal plan or their escape. Moreover, instead of fleeing the parking lot in the heat of the moment, Pickles waited while

1    Prasad retrieved the gun, exited his car, and placed the gun on the
2    windshield where he fired it several times at Reed and then turned it on three
     other witnesses.

3         The jury could reasonably find under these circumstances, that the
     premeditated attempted murder was a natural and probable consequence of
4    the armed robbery. It necessarily follows that the jury could reasonably find
     the lesser offense of attempted murder was also the natural and probable
5    consequence of the armed robbery. We therefore reject defendant's claim.

6    Lodged Document 5 at 31-35 (footnote omitted).

7         The standard for a claim of insufficient evidence on federal habeas review is set

8    forth above in Section A.

9         In this case, Petitioner's claims have no merit. First, in denying Petitioner's §

10   1118.1 motion, the trial judge stated that "the evidence is sufficient to go to the jury" on

11   whether Petitioner was liable for the attempted murder of Mr. Reed under a natural and

12   probably consequence theory of liability. Lodged Document 12 at 888. Second, the

13   appellate court found that there was sufficient evidence for the jury to "reasonably find

14   . . . that the premeditated attempted murder was a natural and probable consequence of

15   the armed robbery." *See supra*. Viewing the record in the light most favorable to the

16   state, neither the trial court decision nor the appellate court decision violated Petitioner's

17   right to due process. In other words, the Court cannot say that, based on the evidence

18   presented, rational jurors could not reach the conclusion that these jurors reached.

19        Therefore, the Court denies Petitioner's claim for habeas relief based on (1) the

20   argument that the trial court violated his federal due process rights by denying his §

21   1118.1 motion and (2) the argument that there was insufficient evidence to support his

22   conviction for premeditated attempted murder. Petitioner has failed to show how the state

23   courts' decisions on these issues were contrary to, or an unreasonable application of,

24   clearly established federal law, as determined by the Supreme Court. Petitioner has also

25   failed to show that the state courts' decisions on these issues resulted in a decision that

26   was based on an unreasonable determination of the facts in light of the evidence presented

27   to the state courts.

28

**C.     CALJIC No. 3.02**

Petitioner claims that his federal right to due process was violated because CALJIC No. 3.02 failed to instruct the jury as to every element of the charged offense. *In re Winship*, 397 U.S. 358, 364 (1970). Specifically, Petitioner argues that, in order for the jury to find him guilty of aider and abettor liability for premeditated attempted murder, it had to have found that Petitioner possessed the premeditated, willful, and deliberate state of mind. Dkt. 23 at 20. Petitioner argues that it was a violation of his right to due process to be convicted of this nontarget offense based solely on the jury finding that the co-defendant's premeditated, willful, and deliberate state of mind was a natural and probable consequence of the target crime of robbery, which is the crime that Petitioner allegedly aided and abetted. *Id.*

In reviewing Petitioner's claim, the California Court of Appeals provided the following factual summary:

> Pickles argues the trial court erred by giving CALJIC No. 3.02 because it fails to instruct the jury that it must determine whether he had the mens rea to aid and abet premeditated attempted murder as a natural and probable consequence of the robbery. He further argues that the jury was not given an instruction on the lesser offense of attempted murder, but was instructed only to determine whether a premeditated attempted murder was a natural and probable consequence of the robbery. Respondent contends these claims have no merit. We agree with respondent's conclusion but differ in our understanding of defendant's claim.

Lodged Document 5 at 27-28 (footnote omitted).

In Petitioner's trial, the court instructed the jury pursuant to CALJIC No. 3.02 on the liability of an aider and abettor for the crime of attempted murder that was the natural and probable consequence of the crime of robbery. Lodged Document 14 at 1259-60. The instruction reads as follows:

> One who aids and abets another in the commission of a crime is not only guilty of that crime, but is also guilty of any other crime committed by a principal which is a natural and probable consequence of the crime originally aided and abetted.

> In order to find the defendant guilty of the crime of attempted murder in violation of Penal Code Section 664/187 as charged in Count Two, you must be satisfied beyond a reasonable doubt that:

1. The crime of robbery in violation of Penal code section 211, was committed;

2. That a defendant aided and abetted that crime;

3. That a co-principal in that crime committed the crime of attempted murder, in violation of Penal Code Section 664/187; and

4. The crime of attempted murder was a natural and probable consequence of the commission of the crime of robbery.

Should you find a defendant guilty of attempted murder as an aider and abettor, you must also determine the truth of the allegation that the attempted murder was willful, deliberate and premeditated with regard to that defendant.

The truth of this allegation is proved if you find beyond a reasonable doubt that (1) a co-principal committed the crime of attempted murder willfully, and with premeditation and deliberation as defined elsewhere in these instructions and (2) the willful, deliberate and premeditated nature of the attempted murder was a natural and probable consequence of the robbery.

*Id*. The court addressed two separate aspects of Petitioner's challenge to this instruction: (1) whether the instruction is inadequate "because it fails to instruct on the requisite mens rea"; and (2) whether the instruction fails to "instruct the jury on the lesser and greater offense of attempted murder and premeditated attempted murder." *Id*. at 29-30.

The California Court of Appeals ultimately rejected Petitioner's claim that the trial court erred by giving CALJIC No. 3.20. The court reasoned and concluded as follows:

[Pickles] argues that the jury should have been instructed to determine whether the premeditated attempted murder was a natural and probable consequence of his mental state to aid and abet the robbery. This argument is based upon a mistaken view of the law. As an accomplice, defendant's mental state is established by showing he aided and abetted the target offense. By contrast, his liability for a nontarget offense, which is a natural and probable consequence of that offense, is based upon principles of causation. No separate mental state need be shown.

[A]n aider and abettor is a person who, 'acting with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids, promotes, encourages or instigates, the commission of the crime.' [Citation.]" (*People v. Prettyman*, *supra*, 14 Cal.4th at p. 259, 58 Cal. Rptr. 2d 827, 926 P.2d 1013, quoting *People v. Beeman*, *supra,* 35 Cal.3d at p. 561, 199 Cal. Rptr. 60, 674 P.2d 1318.)

When an accomplice assists or encourages a confederate to commit one crime, and the confederate commits another more serious crime (the

nontarget offense), the accomplice's liability for the nontarget offense turns not only upon a consideration of the general principles of accomplice liability under *Beeman*, but also upon a consideration of the "natural and probable consequences" doctrine." (*People v. Prettyman*, *supra*, 14 Cal.4th at pp. 259-260, 58 Cal. Rptr. 2d 827, 926 P.2d 1013.) This doctrine is based upon the principle of causation that "'aiders and abettors should be responsible for the criminal harms they have naturally, probably and foreseeably put in motion.'" ( *Id.* at p. 260, 58 Cal. Rptr. 2d 827, 926 P.2d 1013, quoting *People v. Luparello* (1986) 187 Cal. App. 3d 410, 439, 231 Cal. Rptr. 832.)

Under the natural and probable consequence doctrine, the jury's task is to determine "whether the charged crime allegedly committed by the aider and abettor's confederate was indeed a natural and probable consequence of any uncharged target crime that, the prosecution contends, the defendant knowingly and intentionally aided and abetted." *(People v. Prettyman*, *supra*, 14 Cal.4th at p. 267, 58 Cal. Rptr. 2d 827, 926 P.2d 1013.) The test for applying the doctrine is an objective one. Contrary to defendant's assertion, it does not turn on his subjective state of mind. (*People v. Smith* (1997) 57 Cal. App. 4th 1470, 1480, 67 Cal. Rptr. 2d 604.)

In sum, defendant's mental state is established by proving he acted with knowledge of the criminal purpose of the perpetrator with the intent or purpose of committing, encouraging or facilitating commission of the target offense of robbery. (*People v. Beeman*, *supra*, 35 Cal.3d at p. 560, 199 Cal. Rptr. 60, 674 P.2d 1318.) His liability for the nontarget offense of attempted murder is established by proving the attempted murder was a natural and probable consequence of the robbery. CALJIC No. 3.02 correctly states this doctrine.

We also reject defendant's claim the trial court failed to instruct the jury on the lesser and greater offense of attempted murder and premeditated attempted murder. More specifically, he argues the instruction failed to inform the jury that it could find him guilty of an offense less than premeditated attempted murder on a natural and probable consequence theory.

Again, we do not see any inadequacy in the pattern instruction. The jury was instructed to first determine whether "[t]he crime of attempted murder was a natural and probable consequence of the commission of the crime of robbery." It was then instructed that if it found defendant guilty of attempted murder as an aider and abettor, it should determine whether the attempt was premeditated and whether "the willful, deliberate and premeditated nature of the attempted murder was a natural and probable consequence of the robbery." Thus, the jury was instructed on both attempted murder and on the greater offense of premeditated attempted murder. The jury had a clear choice. If it found the premeditated murder was not a natural and probable consequence of the robbery, it would have found defendant guilty only of attempted murder. Accordingly, we reject defendant's claim of instructional error.

Lodged Document 5 at 27-31 *as amended* by Lodged Document 7 at 2-4.

The Supreme Court has explicitly stated that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). Federal habeas review, however, is unavailable for alleged error in the interpretation or application of state law. *See Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985), *cert. denied*, 478 U.S. 1021 (1986).

In this case, Petitioner's claim is a mixed question of the state court's interpretation of its own criminal code as well as whether that interpretation violates any clearly established federal law as stated by the Supreme Court. First, the state court found that, under the California Penal Code, an aider and abettor to the target crime of robbery can be liable for the nontarget offense of premeditated attempted murder if the nontarget offense is the natural and probable consequence of the target offense. *See supra*. Moreover, the jury need not find that the aider and abettor had the premeditated, willful, and deliberate mental state as long as (1) that mental state was established by a person who was aided and abetted and (2) that mental state was a natural and probable consequence of the target offense, which in this case was robbery. *Id*. This Court's review of that interpretation is unavailable on a petition for collateral habeas relief. The Court, however, must address whether that interpretation violates federal due process.

In this case, Petitioner has failed to meet his burden that would entitle him to federal habeas relief. Petitioner argues that the state court decision is an unreasonable application of federal law because it allowed the state to convict him of premeditated attempted murder based on the mental state of the co-defendant. Dkt. 23 at 20. Petitioner, however, fails to show that this decision was contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court. Moreover, Petitioner has failed to show that the state court's decision resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts.

Therefore, the Court denies Petitioner's claim for habeas relief based on the argument that CALJIC No. 3.02 failed to instruct the jury as to every element of the charged offense.

**D. Duress Instruction**

Petitioner contends that his Sixth Amendment right to effective assistance of counsel was violated because of his counsel's failure to request a jury instruction on the defense of duress. Dkt. 1 at 6.

In reviewing Petitioner's claim, the California Court of Appeals provided the following factual summary:

> Pickles contends he was denied the effective assistance of counsel because counsel failed to request CALJIC No. 4.40, which instructs on the defense of duress. More specifically, he argues that counsel erroneously believed he was unable to prove that defense because defendant did not testify. Respondent contends this claim has no merit because there was no evidence to support a defense of duress.

Lodged Document 5 at 35.

The California Court of Appeals ultimately rejected Petitioner's claim that he received ineffective assistance of counsel because of his counsel's failure to request CALJIC No. 4.40. The court reasoned and concluded as follows:

> To establish ineffective assistance of counsel, "a defendant must establish that (1) counsel's representation was deficient, i.e., fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's representation subjected the defendant to prejudice, i.e., a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant. [Citations.]" (*People v. Horton* (1995) 11 Cal.4th 1068, 1122, 47 Cal. Rptr. 2d 516, 906 P.2d 478; *see also Strickland v. Washington* (1984) 466 U.S. 668, 687-696 [80 L.Ed.2d 674, 693-699].) This standard is not met where counsel fails to assert a meritless defense. (*People v. Kipp* (1998) 18 Cal.4th 349, 377, 75 Cal. Rptr. 2d 716, 956 P.2d 1169; *People v. Bacigalupo* (1991) 1 Cal.4th 103, 125, 2 Cal. Rptr. 2d 335, 820 P.2d 559.)
>
> Duress may be raised as a defense to any crime, except one punishable with death, by a person who commits a criminal act "under threats or menaces sufficient to show" that he had "reasonable cause to and did believe" his life would be endangered if he refused. (§ 26, subd. six; CALJIC No. 4.40.)[14] Because duress negates the element of criminal intent, the defendant bears the burden of establishing the factual basis for the defense so as to raise a reasonable doubt as to his intent. ( People v. Graham (1976) 57 Cal. App. 3d 238, 240, 129 Cal. Rptr. 31.)

FN14. CALJIC No. 4.40 states: "A person is not guilty of a crime [other than] when [he][she] engages in conduct, otherwise criminal, when acting under threats and menaces under the following circumstances: 1. Where the threats and menaces are such that they would cause a reasonable person to fear that [his][her] life would be in immediate danger if [he] [she] did not engage in the conduct charged, and 2. If this person then actually believed that [his][her] life was so endangered.

This rule does not apply to threats, menaces, and fear of future danger to [his][her] life[,] [nor does it apply to the crime[s] of (crime punishable by death) ]."

"Central to a defense of duress is the immediacy of the threat or menace on which the defense is premised. [Citations.] '[A] phantasmagoria of future harm,' such as a death threat to be carried out at some undefined time, will not diminish criminal culpability. [Citations.]" (*People v. Bacigalupo*, *supra*, 1 Cal.4th at p. 125, 2 Cal. Rptr. 2d 335, 820 P.2d 559.)

The trial court must only give requested instructions that are supported by substantial evidence. (*People v. Bacigalupo*, *supra*, 1 Cal.4th at p. 125, 2 Cal. Rptr. 2d 335, 820 P.2d 559.) Thus, to be entitled to an instruction on duress, there must be substantial evidence that defendant believed his life was in immediate danger. There was no such evidence here.

Pickles relies on Rathod's testimony that the gun was not visible until Prasad pulled it out from under his sweatshirt and after firing it, told Pickles to take the money from the cash register while Prasad was still holding the loaded gun. Defendant asserts this testimony alone raises a reasonable doubt that he participated in the robbery of his own free will. He further argues that the fact he was wearing gloves only establishes an intent to steal, it does not establish he knew Prasad had a gun that he intended to use. We disagree.

Even if we assume this evidence raises the inference that defendant asserts, which we do not, there remains a total lack of evidence he believed his life was in immediate danger. Moreover, as we have outlined in Part III, there is ample evidence Pickles was an active, knowing participant in the robbery. He was the driver of the getaway vehicle, which he backed into the space for an easy escape, he wore gloves to the robbery, and while Prasad directed him to take the money from the cash register, he took money from Kaur's purse on his own initiative. Nor was there any evidence suggesting that he feared Prasad.

In sum, there was no evidence to show defendant reasonably believed his life was in danger because Prasad had threatened him with immediate death if he refused to participate in the robbery. Because the evidence did not support an instruction on that defense, defense counsel's failure to request such an instruction does not constitute ineffective assistance of counsel.

Lodged Document 5 at 35-38.

The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984). First, a petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. To this end, petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. *Id*. at 690. The federal court must then determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance. *Id*. "We strongly presume that counsel's conduct was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made." *Hughes v. Borg*, 898 F.2d 695, 702 (9th Cir. 1990) (citing *Strickland*, 466 U.S. at 689).

Second, a petitioner must affirmatively prove prejudice. *Strickland*, 466 U.S. at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id*.; *see also Williams v. Taylor*, 529 U.S. at 391-92; *Laboa v. Calderon*, 224 F.3d 972, 981 (9th Cir. 2000).

In this case, Petitioner's ineffective assistance of counsel claim is without merit. If there was no evidence in the record to show that Petitioner only participated in the robbery because he was under duress, then it cannot be said that his counsel's assistance fell below an objective standard of reasonableness. There was some evidence that Petitioner was a willing participant in the robbery. Moreover, Petitioner has failed to show that he was prejudiced in that failure of a duress instruction undermines the outcome of his conviction.

Therefore, the Court denies Petitioner's claim for habeas relief based on the theory that his Sixth Amendment right to effective assistance of counsel was violated because of

his counsel's failure to request a duress instruction. Petitioner has failed to show how the

state court's decision on this issue was contrary to, or an unreasonable application of,

clearly established federal law, as determined by the Supreme Court. Petitioner has also

failed to show that the state court's decision on this issue resulted in a decision that was

based on an unreasonable determination of the facts in light of the evidence presented to

the state courts.

**E.      Grand Theft and Petty Theft Jury Instructions**

Petitioner contends that his federal due process rights were violated because the

trial court failed to instruct the jury on the lesser offenses of grand theft and petty theft.

Dkt. 1 at 7.

In reviewing Petitioner's claim, the California Court of Appeals provided the

following factual summary:

> Pickles contends the trial court erred by refusing to give instructions
> on grand and petty theft as lesser included offenses of robbery. He argues
> that because the jury may have found he only intended to steal and that he
> did not know Prasad intended to use force, the trial court was required to
> give instructions on those two lesser included offenses. Respondent
> contends this claim has no merit because there was no evidence to support
> an instruction on either lesser offense.

Lodged Document 5 at 38

The California Court of Appeals ultimately rejected Petitioner's claim that the trial

court erred by refusing to give jury instructions as to grand theft and petty theft. The

court reasoned and concluded as follows:

> The trial court has a duty to instruct the jury sua sponte on all general
> principles of law relevant to the issues raised by the evidence. (*People v.
> Breverman* (1998) 19 Cal.4th 142, 154, 77 Cal. Rptr. 2d 870, 960 P.2d
> 1094.) That duty extends to instructions on lesser included offenses if there
> is evidence that, if accepted by the trier of fact, would absolve the defendant
> of guilt of the greater offense but not of the lesser offense. (*People v.
> Memro* (1995) 11 Cal.4th 786, 871, 47 Cal. Rptr. 2d 219, 905 P.2d 1305.)
>
> "To justify a lesser included offense instruction, the evidence
> supporting the instruction must be substantial-that is, it must be evidence
> from which a jury composed of reasonable persons could conclude that the
> facts underlying the particular instruction exist." (*People v. Blair* (2005) 36
> Cal.4th 686, 745, 31 Cal. Rptr. 3d 485, 115 P.3d 1145; *People v.
> Breverman, supra*, 19 Cal.4th at p. 162, 77 Cal. Rptr. 2d 870, 960 P.2d

1094.) Thus, the duty does not arise "whenever any evidence, no matter how weak, is presented to support an instruction, but only when the evidence is substantial enough to merit consideration by the jury." (*People v. Barton* (1995) 12 Cal.4th 186, 195, fn. 4, 47 Cal. Rptr. 2d 569, 906 P.2d 531, italics omitted.)

Robbery is defined as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211.) Possession may be either actual or constructive. (*People v. Gilbeaux* (2003) 111 Cal. App. 4th 515, 520, 3 Cal. Rptr. 3d 835.)

Possession is actual when it is taken directly from the person. It is constructive when it is in the owner's "immediate presence," which is when it is so within the owner's reach, observation or control, that she could, if not overcome by violence or prevented by fear, retain possession of it. (*People v. Douglas* (1995) 36 Cal. App. 4th 1681, 1690-1691, 43 Cal. Rptr. 2d 129.) Under this definition, property may be found to be in the owner's immediate presence where it is located in the same room 30 feet away (*ibid* ), or in another room or another building on the premises. (*See People v. Prieto* (1993) 15 Cal. App. 4th 210, 214, 18 Cal. Rptr. 2d 761.)

By contrast, grand theft is committed "[w]hen the property is taken from the person of another." (§ 487, subd. (c).) Petty theft is theft in other cases. (§ 488.) For property to be taken from the person of another within the meaning of section 487, subdivision (c), the property must be actually on, attached to, carried or held by the person at the time it is taken. The offense does not apply to property that has been laid aside, even if it may be immediately retained by the owner. (*People v. Williams* (1992) 9 Cal. App. 4th 1465, 1471, 12 Cal. Rptr. 2d 243.) Thus, the offense of grand theft person is not committed by a defendant who takes a purse lying on a car seat beside the owner. (*Ibid.*)

As respondent argues, the potential scenarios advanced by defendant in support of his claim are based entirely upon speculation. The defense did not present any evidence about the robbery itself. Thus, the undisputed evidence provided by the victims who were in the restaurant at the time of the robbery established that Prasad and Pickles entered the restaurant together, that Prasad told Rathod she was being robbed and ordered her to open the drawer and then fired a shot from his rifle through the deli case. Rathod was scared, so she opened the register, and Pickles emptied the drawer of its funds. Defendants then exited the restaurant as Pickles stuffed the money into his pockets.

On these facts, there is no question there was substantial evidence to support all elements of the crime of robbery and no evidence the crime committed was less than a robbery. (*People v. Barton, supra*, 12 Cal.4th at pp. 194-195, 47 Cal. Rptr. 2d 569, 906 P.2d 531.)

Again, Pickles argues that the jury could have found he did not know Prasad intended to use force and that he, Pickles, only intended to steal. In making this argument, defendant ignores the basis for his liability as an aider and abettor. At the very least, he became a willing participant when he removed money from the cash register after Prasad drew his gun, fired it

and announced "you got robbed." His knowledge that Prasad was armed and intended to commit a robbery and that he actively participated in it is sufficient to impose liability on him for that offense. (*People v. Prettyman, supra*, 14 Cal.4th at p. 261, 58 Cal. Rptr. 2d 827, 926 P.2d 1013.) Accordingly, we find no instructional error.

Lodged Document 5 at 38-41.

The general rule is that "[f]ailure of a state court to instruct on a lesser offense fails to present a federal constitutional question and will not be considered in a federal habeas corpus proceeding." *James v. Reese*, 546 F.2d 325, 327 (9th Cir. 1976). However, a defendant may suffer a due process violation if the court's failure to give a requested instruction prevents a defendant from presenting his theory of the case. *Bashor v. Risley*, 730 F.2d 1228, 1240 (9th Cir. 1984), *cert. denied*, 469 U.S. 838 (1984); *see also United States v. Mason*, 902 F.2d 1434, 438 (9th Cir. 1990) ("A defendant is entitled to have the judge instruct the jury on his theory of defense, provided that it is supported by law and has some foundation in the evidence.").

In this case, Petitioner's claim is without merit. First, it is questionable whether Petitioner even states a federal question based on the failure to include the lesser offense instructions of grand or petty theft. *See James, supra*.

Second, even if Petitioner presents a cognizable claim for violation of his federal due process rights, he fails to show that he was entitled to this theory of defense based on the evidence presented to the trial court. Under California law, robbery is a combination of assault and larceny. *See* CALJIC 9.20, Comments. During the conference on jury instructions, Petitioner's counsel advanced arguments that the grand and petty theft instructions should be given because the jury could possibly believe that Petitioner was unaware that force was used when the money was taken from the register and the purse. Lodged Document 13 at 1054-1061. On the other hand, the state argued that "[t]here's no evidence that no force was used. There's no evidence that anyone was not afraid. There's no evidence of any of that." *Id*. at 1060. The trial court agreed and stated that if Petitioner lacked the specific intent to use force, then "he would be not guilty." *Id*. at

1061.  Moreover, the California Court of Appeals found that Petitioner was not entitled to

the instructions on the lesser included offenses of grand and petty theft because there was

no evidence that the crime committed was less than a robbery.  *See supra.*

Therefore, the Court denies Petitioner's claim for habeas relief based on the

theory that the trial court violated his federal due process rights by not giving the jury

instructions on the lesser included offenses of grand and petty theft.  Petitioner has failed

to show how the state court's decision on this issue was contrary to, or an unreasonable

application of, clearly established federal law, as determined by the Supreme Court.

Petitioner has also failed to show that the state court's decision on this issue resulted in a

decision that was based on an unreasonable determination of the facts in light of the

evidence presented to the state courts.

**F.    Photographic Lineup**

Petitioner contends that the trial court erred when it denied his trial counsel's

request to suppress the photographic lineup as impermissibly suggestive.  Dkt. 1 at 7.

In reviewing Petitioner's claim, the California Court of Appeals provided the

following factual summary:

> Pickles contends the trial court erred by denying his request to
> suppress the photographic lineup as impermissibly suggestive because he
> was the only person in the lineup who was wearing a hooded sweatshirt.
> Respondent contends the lineup was not unduly suggestive and the resulting
> identification was not unreliable.
>
> ***
>
> After Singh and Kaur testified and were unable to identify either
> defendant at trial, defense counsel moved to suppress the out-of-court
> identifications made by Rathod and Singh. Those identifications were made
> from a six-person photographic lineup in which only Pickles was wearing a
> hooded sweatshirt. In light of Rathod's testimony that she focused on two
> things, the rifle and defendants' sweatshirts, counsel argued the
> photographic lineup was impermissibly suggestive.
>
> The court denied the motion finding those circumstances went to the
> weight rather than the admissibility of the evidence. It further found there
> was nothing unduly suggestive about the lineup itself, noting there was
> another individual in the lineup who was wearing a sweatshirt.

Lodged Document 5 at 41.

The California Court of Appeals ultimately rejected Petitioner's claim that the photographic lineup was impermissibly suggestive. The court reasoned and concluded as follows:

> The due process clause requires the exclusion of testimony of a photographic identification only if the identification procedures used were (1) unnecessarily suggestive and (2) the resulting identification was unreliable. (*People v. Yeoman* (2003) 31 Cal.4th 93, 123, 2 Cal. Rptr. 3d 186, 72 P.3d 1166; *Manson v. Brathwaite* (1977) 432 U.S. 98, 106-114 [53 L.Ed.2d 140, 148-154]; *Neil v. Biggers* (1972) 409 U.S. 188, 196-199 [34 L.Ed.2d 401, 409-411.]
>
> As to the first prong, the test for determining whether a procedure is unnecessarily suggestive, is "whether anything caused defendant to 'stand out' from the others in a way that would suggest the witness should select him." (*People v. Carpenter* (1997) 15 Cal.4th 312, 367, 63 Cal. Rptr. 2d 1, 935 P.2d 708.)
>
> As to the second prong that the identification be reliable, we ask whether there was a "substantial likelihood of irreparable misidentification" under the totality of the circumstances. (*People v. Cunningham* (2001) 25 Cal.4th 926, 990, 108 Cal. Rptr. 2d 291, 25 P.3d 519; *Manson v. Brathwaite, supra*, 432 U.S. at pp. 104-107 [53 L.Ed.2d at pp. 147-150].) "The factors to be considered . . . include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself." (*Manson v. Brathwaite, supra*, 432 U.S. at pp. 114, 117 [53 L.Ed.2d at pp. 154, 156]; *Neil v. Biggers, supra*, 409 U.S. at pp. 199-200 [34 L.Ed.2d at p. 411].)
>
> ***
>
> Pickles has the burden of establishing that the identification was unreliable (*People v. Cunningham, supra*, 25 Cal.4th at p. 990, 108 Cal. Rptr. 2d 291, 25 P.3d 519) and as the appellant, he also has the affirmative burden of demonstrating error on appeal. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564, 86 Cal. Rptr. 65, 468 P.2d 193.) He has failed to meet his burden.
>
> Detective Denise Phillips of the Sacramento Police Department testified that she put together the photographic lineup that included defendant Pickles. The lineup was comprised of six photographs taken from an extensive data base. The photos were then selected by computer from photographs of similar looking individuals based upon criteria including race, height, and weight. The photographic lineup was not made a part of the record on appeal and defendant does not contend the individuals pictured in the lineup are not of comparable appearance. In light of the detectives' testimony that the lineup was composed of similarly featured persons selected by a computer and the trial court's finding that there was

nothing inherently suggestive about the lineup, we must presume it was comprised of men of similar facial features.

Under that circumstance, the mere fact Pickles was the only one wearing a particular item of clothing does not make the lineup impermissibly suggestive. (*People v. DeSantis* (1992) 2 Cal.4th 1198, 1222, 9 Cal. Rptr. 2d 628, 831 P.2d 1210 [photographic lineup was not unnecessarily suggestive where the defendant was the only man in a red or orange shirt in a case where the murderer had been described as wearing a red jacket]; *People v. Cunningham, supra*, 25 Cal.4th at p. 990, 108 Cal. Rptr. 2d 291, 25 P.3d 519 [a photographic lineup was not unduly suggestive where the defendant's photograph was the only one showing a person with all three features identified by eyewitnesses to the crime].) Although Rathod testified defendant was wearing a hooded sweatshirt, a hooded sweatshirt is a common item of clothing and standing alone is insufficient to cause defendant to stand out from the other individuals in the lineup so as to suggest to the witness he should be selected.

Moreover, there must be a "substantial likelihood of irreparable misidentification" under the totality of the circumstances (*People v. Cunningham, supra*, 25 Cal.4th at p. 990, 108 Cal. Rptr. 2d 291, 25 P.3d 519; *Manson v. Brathwaite, supra*, 432 U.S. at pp. 104-107 [53 L.Ed.2d at pp. 147-150] ) and defendant has failed to establish a substantial likelihood that either Rathod or Singh misidentified him.

Rathod identified Pickles in both the photographic lineup and at trial. At trial, she identified him without hesitation as the second robber. Her identifications of Pickles at trial and from the lineup were based upon her prior encounters with him as one of her frequent customers and she recognized him as soon as he entered her restaurant the day of the robbery. At the time of the robbery, the lighting conditions in the restaurant were good and she had a good opportunity to observe defendant while he took money from the cash register and from Kaur's purse, as stated. Immediately following the robbery, she gave Officer Ryan Oliver his physical description. One or two days later, Detective Phillips showed Rathod the photographic lineup and she identified Pickles as one of the robbers. This evidence does not show a substantial likelihood of misidentification.

Singh identified Pickles from a photographic lineup shown to her three days after the robbery. After looking at the lineup for a few seconds, she identified him as the other robber. She confirmed that identification when she testified at trial that she recognized his photograph as a depiction of the same man she saw leaving the restaurant following the robbery. Although Singh was unable to make an in-court identification, defendant looked significantly different in the photo than he did at trial. However, the evidence shows she was in the back of the restaurant behind a curtain when Prasad fired the gun and that she left the premises immediately after that.

Nevertheless, even if we conclude Singh's identification of defendant was unreliable, we find no error. The jury was aware her view of defendant was limited and it was Rathod's identification of Pickles as one of the robbers that provided the primary evidentiary basis for his conviction. She was the one who knew him before the robbery, she had the best

opportunity to observe him during the robbery, and at trial, she demonstrated absolute certainty that he was the robber without the gun.

Although Pickles claims Rathod's testimony cannot be viewed as reliable, he bases this argument on matters relating to her credibility generally rather than to her ability to identify him. In so doing, he ignores the fundamental rule governing appellate review that the credibility of witnesses and the weight to be accorded to the evidence are matters exclusively within the province of the trier of fact. (Evid. Code, § 312; *People v. McCleod* (1997) 55 Cal. App. 4th 1205, 1221, 64 Cal. Rptr. 2d 545.) Moreover, "[t]he uncorroborated testimony of a single witness is sufficient to sustain a conviction, unless the testimony is physically impossible or inherently improbable." (*People v. Scott* (1978) 21 Cal.3d 284, 296, 145 Cal. Rptr. 876, 578 P.2d 123; Evid. Code, § 411.) Matters affecting Rathod's credibility were fully explored by defense counsel[15] and resolved by the jury. Because her testimony was neither impossible nor improbable, we must accept the jury's findings as to her credibility. Accordingly, we reject defendant's claim of error.

FN15. Kavita Singh, a former employee of Rathod's tobacco store, recounted that Rathod illegally brought her brother from India and then demanded that Singh marry him or pay her $40,000, or Rathod would shoot her, and Rathod continued to threaten Singh two or three times a month.

Lodged Document 5 at 41-46.

The use of photographic lineups as part of pretrial investigative procedures only violates the federal constitution if "the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 382-83 (1968). Such a claim "must be evaluated in light of the totality of surrounding circumstances." *Id*.

In this case, Petitioner's claim is without merit. The state appellate court cited specific testimony to show that the lineup was not so impermissibly suggestive as to give rise to an irreparable misidentification. Ms. Rathod had seen Petitioner before and had sufficient opportunity to observe the people who robbed the store. Thus, the fact that Petitioner was the only suspect in the lineup with a hooded sweatshirt does not suggest that Ms. Rathod misidentified him because of his attire in the photograph. The remainder of Petitioner's arguments go to the weight of Ms. Rathod's testimony, which was evidence that his counsel thoroughly explored on cross-examination and, ultimately, was for the jury to consider in light of all of the evidence.

Therefore, the Court denies Petitioner's claim for habeas relief based on the theory that the trial court violated his federal due process rights by denying Petitioner's motion to suppress the photographic lineup. Petitioner has failed to show how the state court's decision on this issue was contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court. Petitioner has also failed to show that the state court's decision on this issue resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts.

## G.    Burned Car Evidence

Petitioner contends that his right to due process was violated by the admission of the burned car evidence. Dkt. 1 at 7.

In reviewing Petitioner's claim, the California Court of Appeals provided the following factual summary:

> Pickles contends the trial court abused its discretion when it denied his request to exclude evidence of the arson of the vehicle used in the robbery and that its prejudicial effect rendered his trial fundamentally unfair so as to violate his right under the federal due process clause. He argues the arson evidence was irrelevant because no evidence connected him with the arson and any possible probative value was outweighed by its prejudicial effect. Respondent contends defendant has forfeited his relevance claim by failing to preserve the claim for appellate review and that the claim has no merit because the evidence was probative of defendant's consciousness of guilt.
>
> At the beginning of trial, defense counsel objected to the admission of this evidence on the grounds there was no evidence to connect it to defendant and therefore it was without any substantial probative value and was potentially prejudicial.[16] The matter was submitted and the evidence was admitted without any express ruling by the court or further objection by Pickles.
>
> FN16. The prosecutor explained the evidence was relevant on several grounds. First, it was relevant to show the robbers destroyed or had the evidence destroyed thereby demonstrating a consciousness of guilt. Second, the evidence was relevant to refute defense evidence the car was stolen because it is unlikely a car thief would destroy a car he had gone to the trouble of stealing. Third, it was relevant to explain why the prosecution could not present any physical evidence lifted from the car that would link defendants to the crime such as gunshot residue, fingerprints, and shell casings.

> The prosecutor advised the court he was not claiming either defendant personally burned the car. Prasad was already in custody and Pickles did not fit the description of the man who was seen burning the car.

Lodged Document 5 at 47-48.

The California Court of Appeals ultimately rejected Petitioner's claim that the burned car evidence was prejudicial. The court reasoned and concluded as follows:

> While respondent properly argues that a party who fails to press an objection and secure a ruling fails to preserve the point and forfeits or abandons any claim of error on appeal (*People v. Rowland* (1992) 4 Cal.4th 238, 259, 14 Cal. Rptr. 2d 377, 841 P.2d 897; *People v. Jacobs* (1987) 195 Cal. App. 3d 1636, 1650; , 241 Cal. Rptr. 550 3 Witkin, Cal. Evidence (4th ed.2000) § 389, p. 482), Pickles also raises this claim as ineffective assistance of counsel.

> Under either theory, defendant must establish that the admission of the evidence was prejudicial, i.e. that there is a reasonable probability the result would have been more favorable to the defendant in the absence of counsel's failure. (Evid. Code, § 354 [the erroneous admission of evidence resulted in a miscarriage of justice]; People v. Watson (1956) 46 Cal.2d 818, 835, 299 P.2d 243; *People v. Horton, supra*, 11 Cal.4th at p. 1122, 47 Cal. Rptr. 2d 516, 906 P.2d 478; *Strickland v. Washington, supra*, 466 U.S. at pp. 687-696 [80 L.Ed.2d at pp. 693-699].)

> Pickles cannot establish prejudice under that standard for the same reason he asserts the evidence is irrelevant. Other than the eye witness testimony that Pickles drove the getaway car, there was very little credible evidence describing that car and no evidence independently connecting Pickles to it or to the arson. Eyewitness identification of him as the robber without the gun is based primarily on Rathod's compelling identification of him. Thus, even if counsel had pressed the trial court for a ruling that resulted in the exclusion of the evidence, it is not reasonably probable a more favorable verdict would have resulted.

Lodged Document 5 at 47-49.

Federal courts defer to a state court's interpretation of state law unless the court's interpretation is untenable or amounts to a subterfuge to avoid federal review of a constitutional violation. *Knapp v. Cardwell*, 667 F.2d 1253, 1260 (9th Cir.), *cert. denied* 459 U.S. 1055 (1982). Habeas relief is unavailable for error in the interpretation or application of state evidentiary rules. *Estelle v. McGuire*, 502 U.S. 62 (1991); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985). In order to obtain habeas relief for a violation of state evidence rules, a petitioner must affirmatively demonstrate that the

admission of the questioned evidence rendered the trial so fundamentally unfair as to violate federal due process. *Butcher v. Marquez*, 758 F.2d 373, 378 (9th Cir. 1985).

In this case, Petitioner's claim has no merit. Petitioner has failed to show that the admission of this evidence rendered the trial fundamentally unfair. There was no evidence linking Petitioner to the burning of the car. In fact, Petitioner did not even fit the description of the men whom the eyewitness saw setting the car on fire. *See* Lodged Document 10 at 19. Thus, the evidence of the burned car did not prejudice the other evidence that was admitted against Petitioner. In other words, there is no correlation between the identification of Petitioner as one of the robbers and the evidence that the car was later set on fire by two unidentified people who did not fit Petitioner's physical description.

In the alternative, Petitioner argues that he received ineffective assistance of counsel as to this issue because his counsel failed to preserve this issue for appeal. Dkt. 23 at 37-39. His trial counsel, however, did object to the admission of the burned car evidence in the pretrial proceedings and asked for a separate trial for Petitioner if the trial court allowed the state to admit this evidence. Lodged Document 10 at 21-25. The record is undeveloped as to why the trial court did not expressly rule on the objection or why Petitioner's counsel did not insist on a ruling before the evidence was admitted. Regardless, Petitioner has failed to demonstrate that his counsel's assistance fell below an "objective standard of reasonableness." *See Strickland*, 466 U.S. at 687-96. Moreover, even if the assistance was found to be below the prevailing professional norms, Petitioner has failed to show that admission of this evidence was so prejudicial that his conviction resulted in a miscarriage of justice. *Id.*

Therefore, the Court denies Petitioner's claim for habeas relief based on the theory that the trial court violated his federal due process rights by admitting evidence of the burned getaway car. Petitioner has failed to show how the state court's decision on this issue was contrary to, or an unreasonable application of, clearly established federal law,

as determined by the Supreme Court. Petitioner has also failed to show that the state court's decision on this issue resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts.

**H.      Conclusion**

The state court's decisions denying Petitioner's claims for relief and upholding Petitioner's convictions were not contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court, nor did they result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. The petition for writ of habeas corpus should be denied and the case dismissed with prejudice.

## VI.  CERTIFICATE OF APPEALABILITY

The district court should grant an application for a Certificate of Appealability only if the petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). To obtain a Certificate of Appealability under 28 U.S.C. § 2253(c), a habeas petitioner must make a showing that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). When the court denies a claim on procedural grounds, the petitioner must show that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack v. McDaniel*, 120 S. Ct. at 1604.

In the event that Petitioner appeals the denial of his habeas corpus petition to the Ninth Circuit U.S. Court of Appeals, the Court has determined that a Certificate of Appealability should be denied. The Court has reviewed all of the claims on the merits. Petitioner has not shown that reasonable jurists could debate whether, or agree that, the

petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.

## VII. ORDER

Therefore, it is hereby

**ORDERED** that the Petition for Writ of Habeas Corpus (Dkt. 1) is **DENIED**. A Certificate of Appealability is also **DENIED**.

DATED this 20th day of March, 2009.


_____
BENJAMIN H. SETTLE
United States District Judge